## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| DANNY G. CLERK, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | Civil No.   12-cv-633-GPM-CJP |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT and RECOMMENDATION

**PROUD, Magistrate Judge:**

This Report and Recommendation is respectfully submitted to District Judge G. Patrick

Murphy pursuant to **28 U.S.C. § 636(b)(1)(B)**.

In accordance with **42 U.S.C. § 405(g)**, plaintiff Danny G. Clerk seeks judicial review of

the final agency decision denying his application for Disability Insurance Benefits (DIB) and

Supplemental Security Income (SSI) pursuant to **42 U.S.C. § 423**.

## Procedural History

Mr. Clerk applied for DIB and SSI in June, 2007, alleging disability beginning on

December 1, 2005.   (Tr. 165, 175).   The application was denied initially and on reconsideration.

After a hearing, an Administrative Law Judge (ALJ) denied the application in January, 2010.   (Tr.

90-100).   The Appeal Council granted plaintiff's request for review and remanded for further

proceedings.   (101-103).

Following the Appeals Council remand, the case was assigned to ALJ William L. Hafer.

After holding another hearing, ALJ Hafer denied the application on February 3, 2011.   (Tr.

[1]

21-30).   The Appeals Council denied plaintiff's request for review, and the February 3, 2011,

decision became the final agency decision subject to judicial review.   (Tr. 1).

Plaintiff has exhausted administrative remedies and has filed a timely complaint.

## Issue Raised by Plaintiff

Plaintiff raises the following issues:

1.  The ALJ failed to consider the required factors in assessing plaintiff's credibility.

2.  The ALJ failed to comply with the Appeals Council remand order.

## Applicable Legal Standards

In order to receive DIB or SSI, a claimant must be disabled within the meaning of the

applicable statutes.[1]   For these purposes, "disabled" means the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months."   **42 U.S.C. §§ 423(d)(1)(A) and**

**1382c(a)(3)(A).**   A "physical or mental impairment" is an impairment resulting from anatomical,

physiological, or psychological abnormalities which are demonstrable by medically acceptable

clinical and laboratory diagnostic techniques.   **42 U.S.C. §§ 423(d)(3) and 1382c(a)(3)(C).**

Social Security regulations set forth a sequential five-step inquiry to determine whether a

claimant is disabled.   The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful
> activity. The second step evaluates whether an alleged physical or mental
> impairment is severe, medically determinable, and meets a durational requirement.
> The third step compares the impairment to a list of impairments that are considered

---

[1] The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404.   The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416.   For all intents and purposes relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations.   Most citations herein are to the DIB regulations out of convenience.

[2]

conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

***Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).**

Stated another way, it must be determined (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is severe; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. **See, *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992); *Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993); 20 C.F.R. § 404.1520(b-f).**

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three.   If the claimant has a severe impairment but does not meet or equal a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job. ***Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984).**   The Commissioner bears the burden of showing that there are a significant number of jobs in the economy that claimant is capable of performing. **See, *Bowen v. Yuckert*, 482 U.S. 137, 146, 107 S. Ct. 2287, 2294 (1987); *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).**

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made.   The scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial

[3]

evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g).   Thus, the question before the Court is not

whether Mr. Clerk was, in fact, disabled as of the relevant date; rather, this Court must determine

whether the ALJ's findings were supported by substantial evidence and whether any errors of law

were made.   **See,** ***Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996)** (citing ***Diaz v. Chater*,**

**55 F.3d 300, 306 (7th Cir. 1995)**).   This Court uses the Supreme Court's definition of substantial

evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion."   ***Richardson v. Perales*, 402 U.S. 389, 401 (1971).**

In reviewing for "substantial evidence," the entire administrative record is taken into

consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of

credibility, or substitute its own judgment for that of the ALJ.   ***Jens v. Barnhart*, 347 F.3d 209,**

**212 (7th Cir. 2003)**.   However, while judicial review is deferential, it is not abject; this Court does

not act as a rubber stamp for the Commissioner.   See, ***Parker v. Astrue*, 597 F.3d 920, 921 (7th**

**Cir. 2010), and cases cited therein.**

### The Decision of the ALJ

ALJ Hafer followed the five-step analytical framework described above. (Tr. 21-30).

 He determined that Mr. Clerk had not been engaged in substantial gainful activity since the

alleged onset date, and that he had the severe impairment of traumatic arthritis of the left elbow

following three surgeries. He determined that plaintiff's impairment did not meet or equal a listed

impairment.   The ALJ found that Mr. Clerk had the residual functional capacity to perform work

at the light exertional level, limited to lifting and carrying primarily with the right arm, no climbing

ladders, ropes or scaffolds, no work at unprotected heights, and only occasional overhead

reaching, gripping and grasping with the left arm and hand.

The ALJ determined that plaintiff was unable to do his past work as a highway

[4]

maintenance worker.   Based on evidence from a vocational expert, the ALJ found that plaintiff could do jobs which exist in the national economy, such as cashier, parking lot attendant and laundry worker.

## The Evidentiary Record

The following summary is limited to the portions of the written record which are relevant to the issues presented.

**1.      Agency Forms**

Plaintiff was born in 1967, and was about to turn 38 years old on the alleged date of disability, December 1, 2005.   (Tr. 200).   He was insured for DIB through June 30, 2010.[2]   (Tr. 201).   Mr. Clerk was a street maintenance worker for the city of Carbondale, Illinois, from June, 1990, through December, 2005.   (Tr. 206).

Plaintiff said that he had "constant" pain in his left arm.   He took Percocet, which made him tired.   (Tr. 217-218).   In a Function Report, plaintiff said that he helped to care for his children, but was unable to lift them with his left arm.   He did household chores such as laundry, dishes and repairs as long as strength or heavy lifting was not required.   He was unable to do yardwork.   He was able to lift a maximum of twenty pounds.   (Tr. 222-229).   In a later report, Mr. Clerk said that, beginning in February, 2008, his pain had increased and it was harder for him to lift and hold things.   (Tr. 235).

**2.      Evidentiary Hearing**

Plaintiff was represented by an attorney at the hearing before ALJ Hafer on January 26, 2011.   (Tr. 35).

Plaintiff was 6 feet tall and weighed 200 pounds.   He was right handed.

Mr. Clerk tried to work for Kelly Services in 2008, but could not work because he could

---

[2]  The date last insured is relevant only to the claim for DIB.

[5]

not stay awake.   He took Percocet for pain, but it made him sleepy.   In addition, he could not

stand or walk for long periods of time because, when his arm hangs down, he gets a lot of pain and

swelling.   He wore a splint, but it only helps a little.   He could only stand for 30 minutes.   (Tr.

41-43).

On a typical day, plaintiff did not do much. His wife did the housework and his father did

the yardwork.   Plaintiff watched television and napped when his pain medication took effect.

(Tr. 47-48).   He was usually up and down all night because of pain.   (Tr. 52).

A vocational expert also testified.   The ALJ asked him to assume a person who could do

light work (frequently lift 10 pounds, occasionally lift 20 pounds, and was able to sit, stand and/or

walk for 6 out of 8 hours), limited to mostly lifting with the right arm, occasionally reaching above

shoulder level, and occasional gripping and grasping with the left upper extremity.   The VE

testified that this person would be capable of performing jobs which exist in significant numbers in

the economy.   (Tr. 59).   If he needed to lie down for one or two hours during the workday, he

would not be employable.   (Tr. 60).

**3.**      **Medical Records**

A Functional Capacity Examination was done on December 16, 2004.   The report

indicates that Mr. Clerk hurt his left elbow at work.   In July, 2002, Dr. Tom Davis performed a

lateral epicondylar muscle slide of the left elbow.   He returned to work, and hurt his elbow again

in January, 2003.   Dr. Davis treated him conservatively with physical therapy.    Plaintiff began

seeing Dr. Nash Naam, who performed a re-release of the common extensor origin and left lateral

epicondylectomy in October, 2003.    Mr. Clerk continued to have pain at the medial elbow.   Dr.

Naam performed another surgical procedure at the medial elbow in May, 2004.   (Tr. 342-343).

In December, 2004, a Functional Capacity Evaluation indicated that Mr. Clerk had reduced

[6]

grip and pinch strength in his left hand.   (Tr. 353).   The examiner concluded that he was capable of doing medium work, with complaints of pain.   (Tr. 356).

In January, 2005, a nerve conduction study showed the possibility of minimal left ulnar neuropathy at the elbow.   (Tr. 334).   Dr. Naam advised plaintiff that the findings of the nerve conduction study were "very minimal" and "not diagnostic at all."   He did not recommend any further diagnostic or therapeutic measures, except to avoid acute flexion of the elbows, especially at night.   Dr. Naam concluded that Mr. Clerk was able to lift up to 45 pounds occasionally and up to 40 pounds frequently.   (Tr. 330-331).

Mr. Clerk alleges that he was disabled as of December 1, 2005.

In January, 2006, plaintiff told Dr. Naam that he was not back to work and was looking for a different kind of job.   Dr. Naam had not seen him since January of 2005.   Plaintiff said he had deep aching pain in the left elbow and felt he had decreased strength in his left hand.   On exam, Dr. Naam found no specific tenderness over the medial or lateral epicondyle and no swelling of the elbow.   There was no tenderness over the ulnar nerve.   Active range of motion of the left elbow was normal.   Dr. Naam wrote that he was "not sure of the exact etiology of his pain" and suggested that a bone scan be done.   (Tr. 329).   There are no further records from Dr. Naam, and no record of any further treatment for plaintiff's left elbow in 2006.

An MRI of the left upper extremity, dated May 22, 2007, showed mild common extensor tendon and radial collateral ligament sprains, consistent with lateral epicondylitis.   This study was ordered by Dr. Davis.   (Tr. 282).

Mr. Clerk saw Dr. Davis in June, 2007.   Examination showed he had a full range of motion of the elbow, with tenderness medially and laterally.   He had a normal bone scan.   Dr.

[7]

Davis' impression was post traumatic medial and lateral epicondylitis of the left elbow.   Dr.
Davis recommended a functional capacity evaluation.   (Tr. 324).

A functional capacity evaluation on June 12, 2007, indicated that plaintiff was able to do
work at the medium exertional level with no sustained or repetitive forward reaching or prolonged
overhead work.   (Tr. 379-382).   He returned to Dr. Davis on June 21, 2007.   The examination
was unchanged from the last visit.   Dr. Davis said that he did not need any further surgery, and he
recommended a home exercise program, protective body mechanics and use of analgesics and
anti-inflammatory drugs as needed.   He said that plaintiff's work limitations "are as noted in his
functional capacity evaluation."   (Tr. 325).

Mr. Clerk's primary care physician was Dr. Brian McElheny.   Dr. McElheny submitted a
report in August, 2007, in which he indicated that Mr. Clerk had tendonitis of the left elbow
resulting in decreased range of motion of the left elbow with pain and swelling.   His grip strength
on the left was 2/5.   He had significant limitations in reaching, handling and fingering with his left
arm and hand.   He had no limitations in walking.   (Tr. 360-362).

Dr. McElheny submitted another report in April, 2009.   He said that plaintiff could only
work 2 to 4 hours a day.   However, he also indicated that plaintiff could stand, walk and sit for 8
hours each a day.   He could occasionally lift up to 20 pounds.   Plaintiff was taking Percocet, and
had not reported any side effects.   (Tr. 397-401).

The transcript contains Dr. McElheny's office notes from 2009 and 2010.   There are no
notes of any examinations of plaintiff's left elbow or any conversations with plaintiff about his
elbow.   (Tr. 408-435).   Dr. McElheny wrote prescriptions for Percocet about every 30 days.
(Tr. 408-410, 433-435).

[8]

**4.**      **RFC Assessment**

In September, 2007, a state agency consultant concluded that plaintiff could do medium work (frequent lifting of 25 pounds, occasional lifting of 50 pounds, standing/walking and sitting for 6 out of 8 hours each), with no repeated pushing or pulling with the left arm and only limited reaching and handling with the left arm and hand.   (Tr. 365-372).

## Analysis

For his second point, plaintiff argues that the ALJ erred in that he failed to follow the Appeals Council remand order, which directed him to discuss his reasons for his credibility findings.   However, this point cannot be considered as it is beyond the scope of judicial review. 42 U.S.C. §405(g).   As the Seventh Circuit has explained, "The question whether the ALJ complied with the Appeals Council's remand order is not, in the final analysis, of independent importance. The only question properly before us is whether the ALJ's decision (which the Appeals Council chose to leave undisturbed) is supported by substantial evidence."   *Poyck v. Astrue*, **414 Fed.Appx. 859, 861 (7th Cir. 2011).**

Plaintiff also argues that ALJ Hafer erred in his assessment of plaintiff's credibility by failing to consider the requisite factors.   He is correct.

Social Security regulations and Seventh Circuit cases "taken together, require an ALJ to articulate specific reasons for discounting a claimant's testimony as being less than credible, and preclude an ALJ from 'merely ignoring' the testimony or relying solely on a conflict between the objective medical evidence and the claimant's testimony as a basis for a negative credibility finding."   *Schmidt v. Barnhart*, **395 F.3d 737, 746-747 (7th Cir. 2005), and cases cited therein**.

[9]

20 C.F.R. §404.1529(c) requires the ALJ to consider a number of factors in assessing the claimant's credibility.  These factors include prior work record; daily activities; location, duration, frequency, and intensity of the claimant's pain or other symptoms; factors that precipitate and aggravate the symptoms; type, dosage, effectiveness, and side effects of any pain medication; treatment other than medication; any measures other than treatment the claimant uses to relieve pain or other symptoms; and "any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms."

SSR 96-7p[3] admonishes the ALJ that, "The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision."  Further, "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  SSR 96-7p, 1996 WL 374186, at *4.

Here, ALJ Hafer discussed only plaintiff's use of Percocet and his claim that the drug made him sleepy.  He based his credibility analysis on the fact that Dr. McElheny's report said that plaintiff had not reported any side effects to him.  See, Tr. 25-26.  Although the ALJ acknowledged the requirements of 20 C.F.R. §404.1529 and SSR 96-7p, he did not discuss the other factors.

The Commissioner suggests that the ALJ really did consider the other factors.  For instance, he points out that the ALJ said that plaintiff had worked as a highway maintenance worker.  Doc. 21, p. 12.  But, as plaintiff argues, the ALJ failed to note that plaintiff had worked steadily for the same employer for over 15 years, a factor in his favor.  See, Tr. 206.  The

---

[3] Social Security Rulings "are interpretive rules intended to offer guidance to agency adjudicators."  *Lauer v. Apfel*, 169 F.3d 489, 492 (7th Cir. 1999).  Social Security Rulings are "binding on all components of the Social Security Administration."  20 C.F.R. § 402.35(b)(1).

[10]

Commissioner also argues that the ALJ reviewed both plaintiff's work history and his activities of daily living at the hearing, but this argument misses the mark.   This Court reviews the final decision of the Commissioner, 42 U.S.C. §405(g); the ALJ's questioning of the claimant and discussion during the evidentiary hearing are not part of the final decision subject to judicial review.

Curiously, the Commissioner also argues that, "The fact that an ALJ does not mention a particular piece of evidence in his opinion does not mean he failed to consider it in assessing credibility."   Doc. 21, p. 11.   While that may be true, the reviewing court can only consider the reasons "articulated" by the ALJ.   *Campbell v. Astrue*, **627 F.3d 299, 307 (7th Cir. 2010)**.   "An unarticulated rationale for denying disability benefits generally requires remand."   *Kastner v. Astrue*, **697 F.3d 642, 648 (7th Cir. 2012).**   It is patently obvious that the ALJ's decision cannot be upheld based on speculation that he considered the requisite factors when his written decision contains no such discussion.

While the ALJ is not required to mention every piece of evidence, he is required to articulate the reasons for his findings and to build the requisite "logical bridge" from the evidence to his conclusions.   *Scott v. Astrue*, **647 F.3d 734, 740 (7th Cir. 2011).**   The ALJ must consider the factors set out in 20 C.F.R. §404.1529(c) and "must support credibility findings with evidence in the record."   *Shauger v. Astrue*, **675 F.3d 690, 696 (7th Cir. 20120, citing *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009)**.   ALJ Hafer's opinion omitted discussion of most of the factors that he was required to consider in assessing plaintiff's credibility.   Therefore, the decision is not supported by substantial evidence and the case must be remanded.

The Court wishes to stress that this Report and Recommendation should not be construed as an indication that the Court believes that plaintiff is disabled or that he should be awarded

[11]

benefits.   On the contrary, the Court has not formed any opinions in that regard.

Remand of a social security case can only be ordered pursuant to sentence four or to sentence six of 42 U.S.C. § 405(g).   A sentence four remand depends upon a finding of error, and is itself a final, appealable order.   In contrast, a sentence six remand is for the purpose of receipt of new evidence, but does not determine whether the Commissioner's decision as rendered was correct.   A sentence six remand is not an appealable order.   See, *Shalala v. Schaefer*, **113 S. Ct. 2625, 2629 (1993);** *Perlman v. Swiss Bank Corporation Comprehensive Disability Protection Plan*, **195 F.3d 975, 978 (7th Cir. 1999).**   Here, a sentence four remand is warranted.

## Recommendation

For the reasons discussed above, this Court recommends that the final decision of the Commissioner of Social Security denying plaintiff's application for benefits be REVERSED and REMANDED pursuant to sentence **four** of 42 U.S.C. § 405(g).

Upon remand, judgment should be entered in favor of plaintiff.   *Shalala v. Schaefer*, **509 U.S. 292, 297-298 (1993).**

Objections to this Report and Recommendation must be filed on or before March 4, 2013.

**Submitted:   February 13, 2013.**

**s/ Clifford J. Proud**
**CLIFFORD J. PROUD**
**UNITD STATES MAGISTRATE JUDGE**

[12]